[Cite as *In re S.B.*, 2021-Ohio-1091.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE S.B., ET AL.　　　　　　　　:

　　　　　　　　　　　　　　　　　　:　　Nos. 110016 and 110017

Minor Children　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　:

[Appeal by S.J., Mother]　　　　　　:

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 1, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD18915344 and AD18915345

---

### *Appearances:*

Edward F. Borkowski, Jr., *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

LARRY A. JONES, SR., P.J.:

**{¶ 1}** Mother-appellant, S.J. ("Mother"), appeals from the trial court's judgments granting the motion of appellee, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the Agency"), for permanent custody of Mother's three minor children, M.B. (date of birth February 22, 2017), and twins

Se.B. and Sy.B. (date of births September 29, 2018).[1]  For the reasons that follow, we affirm.

## Procedural History

{¶ 2}   In mid-December 2018, approximately three months after the twins were born and when M.B. was approaching two years of age, the children were removed from Mother and Father's[2] care pursuant to an emergency ex parte order. The Agency sought the order because Sy.B., one of the twins, had suffered a broken arm and Mother was unable to explain how the injury had occurred.  Mother was charged with child endangerment as a result of the injury.  *See* Cuyahoga C.P. No. CR-18-635851-B.

{¶ 3}   The day following the emergency order, CCDCFS filed a complaint, wherein it alleged that Sy.B. was abused, and all three children were dependent. The Agency sought a disposition of temporary custody.  After a hearing, the trial court granted CCDCFS predispositional temporary custody of the children.

{¶ 4}   In March 2019, the trial court held a hearing, and Mother stipulated to an amended complaint.  The trial court adjudicated all three children to be dependent; Sy.B. was also adjudicated abused.  In July 2019, after a hearing, the children were committed to the temporary custody of CCDCFS.

{¶ 5}   In December 2019, the Agency filed a motion to modify temporary custody to permanent custody; an amended motion was filed in February 2020.

---

[1]The trial court issued three judgment entries; one for each child.

[2]Father's parental rights were also terminated.  He is not a party to this appeal, however, and will therefore only be minimally discussed.

The hearing on the permanent custody motion was held in September 2020, after which the trial court granted the Agency's motion, terminated Mother's parental rights, and committed the children to the permanent custody of CCDCFS.

**Trial Testimony**

{¶ 6} CCDCFS presented two witnesses at the hearing on its motion for permanent custody: case worker Sherri Alvis ("Alvis") and case worker Frank Townsley ("Townsley"). They established the following facts.

{¶ 7} Alvis testified that she had been involved with the family prior to Sy.B.'s injury in December 2018. Specifically, she became involved with the family in September 2018 when the twins were born because Mother tested positive for drugs at their births.

{¶ 8} After the December 2018 referral to the Agency about Sy.B.'s arm, Alvis spoke with Mother about the injury. Mother told Alvis that she noticed something was wrong with Sy.B.'s arm but did not think it was broken. Mother was unable to tell Alvis how or when the injury occurred.

{¶ 9} Alvis testified that a case plan was developed to address Mother's parenting, mental health, and substance abuse issues. Mother engaged in some substance abuse services but was twice discharged for noncompliance. Thereafter, CCDCFS referred Mother for a higher level of care. At the time of trial in September 2020, Mother had been engaged in inpatient treatment substance abuse services; she had started the treatment in late July 2020. Mother's last drug screen was taken on July 14, 2020; she testified positive for marijuana. At the

time, she was pregnant, and it was a week before her sentencing in the child endangerment case.

{¶ 10} A no-contact order was issued in the child endangerment case, and Mother's visitation with the children had to comply with that order; supervised visitation was held at the Jane Edna Hunter building in Cleveland. When the COVID-19 lockdown restrictions were implemented in March 2020, the visitations were done virtually. Mother attended approximately 70-80 percent of all the visits. According to both Alvis and Townsley, Mother's interaction with the children was appropriate.

{¶ 11} At one point, Mother and Father were having "issues" and Mother sought Alvis's help in finding another place to live. Alvis helped Mother get registered at a homeless shelter. Alvis testified that she had not seen Mother's residence; Mother told her that "it wasn't appropriate," so she and the children were going to live with maternal grandmother. Eventually, Mother and Father got a home together.

{¶ 12} As of August 2020, Mother's visitation with the children still had not progressed beyond supervised visitation because she had not yet demonstrated sobriety and was on probation for the child-endangerment case. Mother also still had ongoing issues with housing and basic needs. The only case-plan service that she had completed was the parenting component, which she completed at the beginning of the case.

{¶ 13} Townsley testified that when the case went to trial in September 2020, he was not aware that Mother had secured housing. He testified that Mother and Father had told him that they were "just staying" at the house where they were then living, implying that it was not permanent. Moreover, Mother and Father told Townsley that they would meet him outside the house. Townsley admitted that he never asked to go inside the house, however. Also, as mentioned, Mother was engaged in inpatient-treatment-sobriety services at the time of trial. She had started the treatment in mid-July 2020.

{¶ 14} Since their removal from their parents' care, the children had been placed in foster care; the twins were placed together and M.B. was placed in a different foster home. Townsley testified that the placements were positive and appropriate, and the children had good relationships with their foster parents.

{¶ 15} CCDCFS sought the change from temporary custody to permanent custody based on Mother's failure to establish sobriety and her inability to maintain stable housing.

{¶ 16} The children, who were three and almost two years old at the time of trial and unable to express their wishes as to the outcome of the proceeding, had a guardian ad litem ("GAL"). The GAL stated the following on their behalf:

> These are extremely difficult cases for Guardian ad Litems because we're talking about severing parental rights and nobody ever wants to do that, but yet I am charged with the responsibility of making an investigation and a recommendation of what's in the best interest of the children, and based upon my investigation it is my recommendation that the bests interests of the children is for this Court to grant the motion that was filed by the Agency.

## Trial Court's Findings and Mother's Assignment of Error

{¶ 17} The trial court issued three judgments, one for each child, granting CCDCFS's motion for permanent custody, thereby terminating Mother's parental rights. As to each child, the court made a finding under R.C. 2151.414(B)(1)(a) that the child "cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." In support of its findings, the court included specific findings in relation to multiple factors set forth under R.C. 2151.414(C). The trial court further found that permanent custody was in each child's best interest under R.C. 2151.414(D).

{¶ 18} Mother assigns the following sole assignment of error for our review: "The trial court abused its discretion by granting permanent custody of Appellant's children to CCDCFS against the manifest weight of the evidence."

## Law and Analysis

{¶ 19} We begin our discussion by recognizing that a parent has a "'fundamental liberty interest' in the care, custody and management" of his or her child, *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and the right to raise one's own child is "'an essential and basic civil right,'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). This right is not absolute, however. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 8th Dist. Cuyahoga No. 104325,

2017-Ohio-1037, ¶ 29, quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 20} Termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14, and, therefore, it is "an alternative [of] last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. It is, however, "sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994).

{¶ 21} The clear and convincing standard of review applies to permanent-custody determinations. "Clear and convincing evidence" is that measure or degree of proof that is more than a "preponderance of the evidence," but does not rise to the level of certainty required by the "beyond a reasonable doubt" standard in criminal cases. *In re M.S.*, at ¶ 8. "It produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Id.*

{¶ 22} In determining whether a juvenile court based its decision on clear and convincing evidence, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the degree of proof. *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). A juvenile court's decision to grant permanent custody will not be reversed as being against the

manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence." *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16. Before a juvenile court can terminate parental rights and grant permanent custody of a child to CCDCFS, it must apply the two-prong test set forth in R.C. 2151.414.

### First Prong:  R.C. 2151.414(B)(1)(a)-(e)

{¶ 23} First, the juvenile court must find by clear and convincing evidence that one of the following conditions set forth in R.C. 2151.414(B)(1)(a) through (e) exists:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

> (b) The child is abandoned.

> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as

described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 24} Here, the trial court made a finding as to each child under subsection (a) that the child "cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." The court supported its findings with the following factors set forth under R.C. 2151.414(E): failure to remedy (E)(1); lack of commitment (E)(4); pleaded guilty to child endangerment charges (E)(6); and abuse of Sy.B. (E)(15).

{¶ 25} Mother has not challenged the trial court's finding under the first prong of the test that each child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." Our review demonstrates that the finding was supported by some competent, credible evidence. As Mother acknowledges, "she must concede that she was convicted of one of the listed offenses in (E)(6) and thus under the statute the court had to make the finding that it made." Mother's brief, p. 10. *See* R.C. 2151.414(E)(6) (The court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent" if "one or more of the following exist * * * the parent has been convicted of" child endangerment "and the child or a sibling of the child was a victim of the offense.").

Because there was no error with the court's finding under the first prong, we consider the court's finding under the second prong.

## Second Prong:  R.C. 2151.414(D)

{¶ 26} Second, the juvenile court must find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child.  R.C. 2151.414(D).  This court reviews a trial court's best-interest determination under R.C. 2151.414(D) for an abuse of discretion.  *In re J.F.*, 2018-Ohio-96, 102 N.E.3d 1264, ¶ 55 (8th Dist.), citing *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47.  In this regard, "'[a] trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion.'"  *In re J.F.* at *id.*, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 60.

{¶ 27} In considering the best-interest determination, R.C. 2151.414(D)(1) mandates that the juvenile court consider all relevant factors, including the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 28} The juvenile court has considerable discretion in weighing these factors. We review a juvenile court's determination of a child's best interest for abuse of that discretion. *In re D.A.* at *id.* Although the juvenile court is required to consider each factor listed in R.C. 2151.414(D)(1), no one factor is to be given greater weight than the others. *In re T.H.*, 8th Dist. Cuyahoga No. 100852, 2014-Ohio-2985, ¶ 23, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Only one of the factors set forth in R.C. 2151.414(D)(1) needs to be resolved in favor of permanent custody. *In re A.B.*, 8th Dist. Cuyahoga No. 99836, 2013-Ohio-3818, ¶ 17.

{¶ 29} Moreover, "the best interest determination focuses on the child, not the parent." *In re K.Z.*, 8th Dist. Cuyahoga No. 107269, 2019-Ohio-707, ¶ 85, citing *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 59. "A trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion." *In re N.B.* at ¶ 60, citing *In re T.W.*, 8th Dist. Cuyahoga No. 85845, 2005-Ohio-5446, ¶ 27, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

{¶ 30} Here, the trial court found under subsection (a) that the children are "bonded with foster parents and [have] a very positive relationship with them." Under subsection (b), the court noted that the children were too young to express

their wishes, but the GAL recommended permanent custody. The court further found under subsection (c) that at the time of the September 2020 trial, the children had been in CCDCFS's custody since December 2018, which meant that the twins had been in the Agency's custody since they were three months old. The court further found that they were doing well in their foster care placements.

{¶ 31} In regard to the finding under subsection (d) relative to the children's need for a legally secure placement and whether that could be achieved without a grant of permanent custody, the court found that the children "cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." The court further made a specific finding as to each child that the child

> needs a safe and stable home where [the child's] basic needs can be met on a consistent basis as well as a home in which [the child] can thrive. This cannot be achieved with Mother or Father as they do not have stable housing and have continuously failed to address the issues that led to the removal of the child.

{¶ 32} Upon review, there is competent, credible evidence to support the trial court's best-interest finding; it did not abuse its discretion. In regard to the children's interaction with significant people in their lives, it is true that Mother visited with the children 70 to 80 percent of her visitation time and that her visitations were generally appropriate. However, because of the no-contact order, the children's young ages, and the Covid-19 restrictions, her ability to bond with them was limited. They have spent the majority of their young lives in foster care

and have bonded with their foster families. To that end, the GAL noted the children's young ages and recommended permanent custody.

{¶ 33} Mother contends that because she made progress on her case plan, the children's need for secure placement could have been achieved without granting permanent custody to the CCDCFS. But this court has held that after making a "cannot or should not" finding under R.C. 2151.414(E), the trial court is required to place the child with someone other than the parent. *In re Mayle*, 8th Dist. Cuyahoga Nos. 76739 and 77165, 2000 Ohio App. LEXIS 3379, 20-21 (July 27, 2000). As mentioned, Mother conceded that one of the findings under R.C. 2151.414(E) existed here; that is, that she had been convicted of child endangerment of one of her children.

{¶ 34} We recognize the impediments the Covid-19 restrictions interjected in this case. But those restrictions were not imposed until 15 months into the case. An order extending temporary custody would have only lasted until December 2020, because the court may not maintain a child in temporary custody beyond two years. *See* R.C. 2151.353(G); R.C. 2151.415(D)(4). There is no indication in the record that Mother would have been able to comply within that deadline.

{¶ 35} In light of the above, the trial court's best-interest determination was supported by some competent, credible evidence and the trial court did not abuse its discretion in making it. All children have "'the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.* at ¶ 66, quoting *In re Hitchcock*,

120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life" for dependent children and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986). The record here demonstrates that the trial court sought to fulfill that goal.

{¶ 36} Mother's sole assignment of error is overruled.

{¶ 37} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR