[Cite as *In re J.S.*, 2023-Ohio-82.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE J.S., ET AL. | : | |
| | : | |
| Minor Children | : | Nos. 111256 and 111258 |
| | : | |
| [Appeal by S.S., Mother] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 12, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD20904448 and AD21902244

---

### *Appearances:*

Valore and Gordillo, LLP, and Michael Gordillo, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother ("Mother") appeals from the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, granting permanent custody of her minor children, J.S. and M.S., to appellee, the Cuyahoga County

Division of Children and Family Services ("CCDCFS" or the "Agency").[1]   For the reasons that follow, we affirm the juvenile court's judgment.

## Procedural and Factual History

{¶ 2} On April 29, 2020, CCDCFS filed a complaint alleging that J.S., born April 11, 2020, was an abused and dependent child as defined by R.C. 2151.031(D) and 2151.04(B). The complaint averred, in part, the following particulars:

1. Mother has a substance use disorder related to marijuana. The child tested positive for marijuana at birth. This is mother's second child who tested positive for marijuana.

2. Mother lacks the necessary income to provide basic needs for the child.

3. Mother has three other children who were previously adjudicated and are no longer in her custody due in part to mother's substance use disorder, financial instability, untreated mental health issues, and lack of housing. Two children were committed to the legal custody of their paternal grandmother. The other child was committed to a step grandfather. *See* Case Nos. AD17903644, AD17907121, and AD17908415.

4. Mother has prior convictions for forgery and theft, for which she served a period of incarceration. *See* Cuyahoga County Case No.: CR-15-600885-E.

5. Alleged father, [D.S.], lacks the necessary income to provide basic needs for the child.[2]

6. Alleged father, [D.S.], has failed to establish paternity.

7. Alleged father, John Doe, has failed to establish paternity and has failed to support, visit, or communicate with the child since birth.

---

[1] The juvenile court issued two judgment entries:  one for each child.

[2] The alleged father, D.S. ("Alleged Father"), is not a party to this appeal, but will be referenced in the discussion to provide context.

{¶ 3} Along with the complaint, CCDCFS also filed a motion for predispositional temporary custody of J.S. to the agency. Following a hearing held on May 26, 2020, the juvenile court granted the motion and J.S. was placed in the predispositional temporary custody of CCDCFS.

{¶ 4} The agency developed a case plan to assist Mother in remedying the issues that led to J.S.'s removal. Specifically, the case plan was geared towards addressing Mother's challenges with substance abuse, mental health, parenting, housing, and providing for the child's basic needs. On September 10, 2020, following a hearing where Mother stipulated to an amended complaint, the juvenile court adjudicated J.S. abused and dependent and placed the child in the Agency's temporary custody.

{¶ 5} On March 24, 2021, while Mother's case involving J.S. was pending, CCDCFS filed a separate complaint, for abuse and dependency, relating to another child of Mother. That child, M.S., was born prematurely, on February 17, 2021, at approximately 26 weeks gestation, with significant medical challenges.

{¶ 6} That complaint averred, in part, the following particulars:

1. Mother has a substance abuse issue related to marijuana that interferes with her ability to care for the child. M.S.'s meconium tested positive for marijuana at birth. This is mother's third child who tested positive for marijuana at birth.

2. Mother lacks the necessary income and the ability to meet the basic needs of the infant.

3. Mother has mental health diagnoses of depression and anxiety that interfere with her ability to care for the child.

4. Mother has four other children who were previously adjudicated and are not in her custody due in part to mother's issue with substance abuse and mental health. Three of the children were committed to the legal custody of relatives. *See* Case Nos. AD17903644, AD17907121, and AD17908415. The fourth child is in the temporary custody of CCDCFS and a motion for permanent custody is pending. *See* Case No. AD20904448.

5. Alleged father, [D.S.], has not yet established paternity.

6. [D.S.] lacks the necessary income and the ability to meet the basic needs of an infant.

7. [D.S.] has another child who was adjudicated and committed to the temporary custody of CCDCFS. A motion for permanent custody is pending. *See* Case No. AD20904448.

8. Alleged father, John Doe, has failed to establish paternity and has failed to support, visit, or communicate with the child since birth.

{¶ 7} CCDCFS filed a contemporaneous motion for permanent custody of

M.S. In the affidavit filed in support of CCDCFS's motion, caseworker Deja Arthur

("Arthur") averred in pertinent part, as follows:

1. M.S. was born premature on February 17, 2021 and is medically fragile due to being born premature.

2. Mother has mental health diagnoses of depression and anxiety that interfere with her ability to care for the child.

3. Mother has four other children who were previously adjudicated and are not in her custody due in part to mother's issues with substance abuse and mental health. Three of the children were committed to the legal custody of relatives. *See* Case Nos. AD17903644, AD17907121, and AD17908415. The fourth child is in the temporary custody of CCDCFS and a motion for permanent custody is pending. *See* Case No. AD20904448.

4. Alleged father, [D.S.], has not yet established paternity.

5. [D.S.] is currently unemployed.

6. [D.S.] has another child who was adjudicated and committed to the temporary custody of CCDCFS. A motion for permanent custody is pending. *See* Case No. AD20904448.

7. Alleged father [D.S.], has pending charges of gross sexual imposition, importuning, public indecency, and endangering children. A sibling of M.S. was the alleged victim while on a visit with mother at the home she shares with [D.S.]. *See* Case No. CR-21-661303-A.

8. Alleged father, John Doe, has failed to establish paternity and has failed to support, visit, or communicate with the child since birth.

**{¶ 8}** As was done with J.S., the juvenile court also placed M.S. in the predispositional temporary custody of CCDCFS.

**{¶ 9}** On the same day that the complaint for abuse and dependency concerning M.S. was filed, CCDCFS also filed a motion to modify temporary custody of J.S. to permanent custody. In support of that motion, CCDCFS asserted that the conditions listed in R.C. 2151.414(B)(1)(a) existed and that one or more of the factors listed in R.C. 2151.414(E) applied to the parents at issue. Additionally, CCDCFS asserted that after considering all relevant factors, including those listed at R.C. 2151.414(D)(1)(a)-(e), the evidence to be presented would establish clearly and convincingly that an award of permanent custody was in J.S.'s best interest.

**{¶ 10}** In the affidavit filed in support of CCDCFS's motion, caseworker Halli Martin ("Martin") averred in pertinent part, as follows:

1. I was assigned the case on or about March 5, 2021.

2. The child was committed to the emergency custody of CCDCFS pursuant to an order journalized on May 5, 2020.

3. The child was adjudicated dependent, pursuant to an order journalized on September 10, 2020.

4. The child was committed to the temporary custody of CCDCFS pursuant to an order journalized on September 10, 2020.

5. A case plan was filed with Juvenile Court and approved which required that mother was to complete a psychological assessment and follow all recommendations, engage in substance abuse services, complete parenting classes, obtain and maintain stable housing and provide for the basic needs of the child.

6. Mother is not compliant with case plan services.

7. Mother has three other children who were previously adjudicated and are no longer in her custody due in part to mother's substance use disorder, financial instability, untreated mental health issues, and lack of housing. Two children were committed to the legal custody of their paternal grandmother. The other child was committed to the legal custody of a step grandmother. *See* case nos. AD17903644, AD17907121, and AD17908415.

8. A case plan was filed with Juvenile Court and approved which required that alleged father, [D.S.] was to engage in substance abuse services, complete parenting classes, obtain and maintain stable housing and provide for the basic needs of the child.

9. Alleged father, [D.S.] has not established paternity and is not compliant with case plan services.

10. Alleged father, John Doe, has failed to establish paternity and has failed to support, visit, or communicate with the child since birth.

{¶ 11} On January 3, 2022, the scheduled date for the dispositional hearing concerning J.S., both Mother and Father stipulated to the Agency's amended complaint for abuse and dependency concerning M.S. Among the stipulations were that "Mother has mental health diagnoses of depression and anxiety that interfere with her ability to care for the child." Both also stipulated that "[a]lleged father, [D.S.] has pending charges of gross sexual imposition, importuning, public indecency, and endangering children. A sibling of M.S. was the alleged victim while

on a visit with mother at the home she shares with [D.S.]." *See* Case No. CR-21661303-A.

{¶ 12} Following the stipulations, the juvenile court adjudicated M.S. a dependent child. Thereafter, by agreement of the parties, both matters were consolidated for disposition. The dispositional hearing commenced the same day.

**Dispositional Hearing**

{¶ 13} At the hearing, CCDCFS presented the testimony of Sara Massey ("Massey"), a Private Practice Clinician at New Leaf Counseling, LLC. Massey testified that she was formerly employed as a Court Clinician with Cuyahoga County, and CCDCFS referred Mother for a mental-health evaluation. Massey testified that the Agency requested the evaluation because of their concerns about Mother's cognitive functions, mental health, and trauma history. As part of the evaluation, Massey requested medical records from University Hospitals and the Centers for Family and Children (the "Centers"). Massey also interviewed Mother and conducted a number of psychological tests.

{¶ 14} Massey noted that although the medical records indicated that the children tested positive for marijuana at birth, Mother was adamant that she was not using marijuana and insisted the test was a false-positive. During the evaluation, Mother admitted to ongoing depression, trouble with moodiness, and sadness. During the evaluation, Mother alluded to wishing that she had died during the birth of M.S. Mother reported a prior diagnosis of bipolar disorder, was prescribed Zoloft, and that she had previously engaged in mental-health services.

{¶ 15} Massey testified that, based on the contents of the medical records, she discussed the negative genetic impact on the children because of the familial connection with Alleged Father. Mother did not seem to appreciate that the family connection was a possible cause of some of the children's medical challenges. Massey noted that Mother indicated that due to separation during childhood, she did not know that the Alleged Father was her first cousin until after they had begun a romantic relationship. Mother admitted that she was aware they were first cousins prior to the birth of their second child.

{¶ 16} Massey testified that Mother completed the Wechsler Abbreviated Scale of Intelligence Test, which looks at verbal comprehension and perceptual reasoning. Mother overall score was 78, which would be considered within the borderline range of intellectual functioning. Mother scored much lower on verbal comprehension, when compared to her perceptual reasoning, and acknowledged challenges reading and understanding written words. Massey also conducted the Wide Range Achievement Test to gauge Mother's level of reading. That test revealed that Mother read at a seventh-grade level.

{¶ 17} Massey testified that she conducted the Substance Abuse Subtle Screening Inventory test, designed to evaluate whether Mother was likely to meet the criteria for substance use diagnoses. At the time Massey did not make a referral for substance abuse, because the medical records received indicated that Mother was compliant with her substance-abuse treatment.

{¶ 18} Massey testified that based on her evaluation, she diagnosed Mother with bipolar disorder and major depression. Massey recommended that Mother meet with a psychiatrist to evaluate whether her current medication was appropriate and if additional medication was needed to manage Mother's symptoms. Massey also recommended that Mother participate in individual counseling to better understand her symptoms, so that she could be able to respond more appropriately to life's stressors.

{¶ 19} Massey also recommended parenting classes so that Mother could better understand the needs of the children, specifically their medical needs, if they were reunited. Given Mother's verbal comprehension challenges, Massey recommended that Mother utilized a case manager or community resource, if reunited with the children. Massey deemed the parenting component to be very crucial because of the children's severe medical condition.

{¶ 20} Massey testified that parenting classes were necessary because, at the time of the evaluation, there was an active allegation that the Alleged Father had engaged in inappropriate sexual conduct with one of Mother's older children. Massey noted that Mother adamantly denied that this occurred and did not appreciate the need to provide any additional safety precautions, given the allegation.

{¶ 21} CCDCFS also presented the testimony of Arthur, an Extended Service Worker, whose testimony conformed to the affidavits provided in support of the respective motions for permanent custody. Arthur testified about the case plan

developed to assist Mother and Alleged Father to remedy the issues that prompted the Agency's involvement. Arthur noted that Mother's case plan objectives were designed to address issues of mental health, substance abuse, parenting skills, stable housing, and employment.

{¶ 22} Arthur testified the Agency referred Mother to the Centers to address issues with substance abuse. Arthur noted that Mother completed intensive outpatient treatment ("IOP") in September 2021. As part of the referral, Mother was required to submit random weekly drug screens. Arthur noted that Mother did not submit consecutive drug screens. Instead, Mother routinely missed weeks or failed to comply within the requested 24-hour window. Arthur testified that Mother tested positive for alcohol in October 2021, submitted a drug screen in November 2021, which was negative, and submitted another drug screen in December 2021, but that result was still pending.

{¶ 23} Arthur testified that the Agency also referred Mother to the Centers for mental-health services. Arthur noted that based on correspondence from the Centers, Mother had only completed the mental-health assessment. There was no indication that Mother had availed herself of any additional mental-health services.

{¶ 24} Arthur testified that Mother was referred to the Ohio Guidestone Nurturing Parenting Program ("Guidestone"). Arthur noted that Guidestone's counselor reported that Mother was not compliant. The counselor also noted that due to routinely missing appointments, Mother had not completed Guidestone's three-month program.

{¶ 25} Arthur testified that the Agency referred the Alleged Father to the Centers for mental health and substance-abuse services. Arthur noted that the Alleged Father had not engaged in any case-plan services. Arthur noted that Mother and the Alleged Father were still in a relationship with each other, that they had visited the children minimally, and that the visits were primarily virtually.

{¶ 26} Arthur testified that because both children were born prematurely, there were attendant severe medical challenges. M.S.'s situation was even more complicated, given cardiac, pulmonary, and optical challenges. M.S. required abundant physical and occupational therapies, as well as the care of an ophthalmologist. Arthur testified that both were in the care of very attentive and engaged foster parents. Arthur noted that although the foster parents have invited Mother to attend M.S.'s many appointments, Mother failed to attend any.

{¶ 27} Based on the foregoing, Arthur recommended that the juvenile court grant the Agency's respective motions for permanent custody.

{¶ 28} The children's guardian ad litem, Harvey E. Tessler (the "GAL"), who previously filed written reports, likewise recommending that permanent custody be granted to the agency, verbally indicated that his sentiments favoring a grant of permanent custody to the agency had not changed. The GAL noted that M.S.'s intense medical needs were hard to imagine. A review of the filed report provides illumination as follows:

> M.S. was a premature baby, having a massive Grade 4 bleeding on the brain * * * weighing less than two pounds at birth. * * * [A]s a result of the severe brain bleed, part of her brain is dead and * * * she has

between 70 to 80% chance of having cerebral palsy. * * * [M.S.] receives regular treatment from her pediatrician, ophthalmologist, cardiologist, geneticist, neonatologist, pulmonologist, and neurologist. She is also involved in early childhood intervention/Help Me Grow and has in home services for physical therapy and is on the wait list for speech and occupational therapy. She is immuno-compromised * * * has conditions with her lungs, heart, and may have dwarfism.

{¶ 29} The GAL further noted that M.S. had been with the same foster family since her release from the hospital. The foster parents have had 60 hours of specialized training and during M.S.'s three-month hospital stay, were taught by the healthcare professionals how to specifically care for M.S.

{¶ 30} Pertinent to J.S., the GAL's written report noted that J.S. was also born premature, with bleeding on the brain and with a slow heart rate. J.S. was in foster care, with the same foster family for more than a year and was thriving.

{¶ 31} On January 6, 2022, the juvenile court journalized entries terminating all parental rights and ordered the children placed in the permanent custody of CCDCFS.

{¶ 32} Mother now appeals and raises the following sole assignment of error for our review:

## Assignment of Error

The trial court's award of permanent custody and termination of appellant's parental rights is against the manifest weight of the evidence.

**Law and Analysis**

{¶ 33} In her sole assignment of error, Mother argues the juvenile court erred in granting permanent custody to the agency because the decision is against the manifest weight of the evidence.

{¶ 34} At the outset, we note, it is well established that a parent has a fundamental right to raise and care for his or her child. *In re L.M.*, 8th Dist. Cuyahoga No. 106072, 2018-Ohio-963, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28; *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 40. We recognize that termination of parental rights is "the family law equivalent of the death penalty in a criminal case." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, citing *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶ 35} An appellate court will not reverse a juvenile court's decision awarding permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re J.M-R.*, 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 28. "Clear and convincing evidence" is that measure or degree of proof that is more than a "preponderance of the evidence," but does not rise to the level of certainty required by the "beyond a reasonable doubt" standard in criminal cases. *In re K.S.*, 8th Dist. Cuyahoga No. 109928, 2021-Ohio-694, ¶ 15, citing *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 8, citing *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), citing *Lansdowne v. Beacon*

*Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987). It "produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re K.S.* at ¶ 15, citing *In re M.S.* at ¶ 18.

{¶ 36} The termination of parental rights is governed by R.C. 2151.414. *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. R.C. 2151.414 sets forth a two-part test courts must apply when deciding whether to award permanent custody to a public services agency.

### First Prong: R.C. 2151.414(B)(1)(a)-(e)

{¶ 37} Under the first prong, the juvenile court must find by clear and convincing evidence one of the following five factors:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was

previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 38} Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied. *In re S.S.*, 8th Dist. Cuyahoga No. 109356, 2020-Ohio-3039, ¶ 28, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 28.

{¶ 39} In this matter, the juvenile court found, pursuant to R.C. 2151.414(B)(1)(a), that the children could not be placed with either parent within a reasonable time or should not be placed with either parent.[3]

{¶ 40} In assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E). *In re A.V.*, 8th Dist. Cuyahoga No. 101391, 2014-Ohio-5348, ¶ 58; *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14; *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 13.

{¶ 41} A juvenile court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent.

---

[3] The findings set forth in this decision refers to both children, unless specifically noted.

*In re Ca.T.,* 8th Dist. Cuyahoga No. 108969, 2020-Ohio-579, ¶ 27, citing *In re V.C.,* 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 42.

{¶ 42} Pursuant to R.C. 2151.414(E)(1), the juvenile court found that

> following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist and remedy the problems that initially caused the child to be placed outside the home, [Mother and Alleged Father] have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home

{¶ 43} Pursuant to R.C. 2151.414(E)(4), the juvenile court found that

> [Mother and Alleged Father] have demonstrated a lack of commitment toward the [children] by failing to regularly support, visit, or communicate with the [children] when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

{¶ 44} Pursuant to R.C. 2151.414(E)(16), regarding any other factor the Court finds relevant, the juvenile court found that

> Mother has four other children who are not in her custody. Alleged Father has another child who was adjudicated on today's date and this Court placed that child in the permanent custody of CCDCFS following the joint dispositional hearing with this child.

{¶ 45} Pursuant to R.C. 2151.414(E)(16), and specifically regarding M.S., the juvenile court found that

> Mother and Alleged Father have failed to receive any training to care for the child's extensive medical needs. Mother and Alleged Father have failed to attend the child's medical appointments and they have only visited with the child three times since she has come into Agency custody * * *.

{¶ 46} Notably, and specifically regarding J.S., the juvenile court found that

> Mother and Alleged Father have not made significant progress on the case plan, as required by ORC 2151.415(D)(1) and therefore a first

extension of temporary custody cannot be ordered and would not be in the best interest of the child[ren]. Additionally, time has elapsed for a first extension and the Court finds that the Mother and Alleged Father have not made substantial additional progress on the case plan, as required by ORC 2151.415(D)(2) and therefore a second extension cannot be ordered and would not be in the best interest of the child[ren].

{¶ 47} Indeed, the juvenile court's finding above is supported by clear and convincing evidence. Arthur provided exhaustive testimony that the agency developed a case plan designed to remedy the issues that led to their involvement with the children. Yet, the overwhelming evidence established that Mother failed to commit to the case plan's objectives geared to addressing substance abuse, mental health, and parenting concerns. It is undisputed, despite Mother's contentions to the contrary, that she did not consistently engage in and therefore could not benefit from the very services designed to achieve reunification of Mother and children.

{¶ 48} Additionally, although Mother completed the IOP, she did not follow through with aftercare. Mother compounded the situation by failing to consistently submit to the agency's random drug screens. Further, Mother failed to fully embrace the importance of addressing her mental health. Again, although Mother completed the mental-health assessment, she never followed through with the recommended services.

{¶ 49} The above sampling clearly demonstrates that the children could not be placed with Mother within a reasonable time or should not be placed with Mother. As such, there is no dispute that the juvenile court's finding pursuant to R.C. 2151.414(B)(1)(a), is supported by the record.

{¶ 50} Our review of the record reveals that the juvenile court's findings under the first prong are supported by competent and credible evidence. Finding no error with the juvenile court's findings under the first prong, we consider the court's finding under the second prong.

### Second Prong: R.C. 2151.414(D)

{¶ 51} The second prong also requires the juvenile court to find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. We review a trial court's best-interest determination under R.C. 2151.414(D) for an abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. In this regard, "'[a] trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 60.

{¶ 52} R.C. 2151.414(D)(1) sets forth best-interest factors that the court must consider when making the best-interest determination under R.C. 2151.414(D)(1), including

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child * * *;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 53} The juvenile court has considerable discretion in weighing these factors. *In re D.A.* at ¶ 47. Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, "[R.C. 2151.414(D)(1)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child  * * *." *Id.* at ¶ 64.

{¶ 54} Further, the Ohio Supreme Court, in *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, held that R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). *Id.* at ¶ 31. Consideration is all the statute requires. Although a reviewing court must be able to discern from the magistrate's or juvenile court's decision, and the court's judgment entry, that the court satisfied the statutory requirement that it consider the enumerated factors, we may not graft onto the statute a requirement that the court include in its decision a written discussion of or express findings regarding each of the best-interest factors. *Id.*

{¶ 55} We begin our inquiry into the second prong by noting the juvenile court articulated that it considered the relevant factors set forth under R.C.

2151.414(D)(1) when assessing the child's best interests. The record before us

indicates that the juvenile court satisfied the statutory requirements herein.

{¶ 56} Specifically, under subsection (a), the juvenile court found that

[J.S.] has been residing with current caregiver since release from the hospital after birth. [J.S.] has a significant bond with foster mother, foster brother and foster mother's mother.

* * *

[M.S.] is bonded with caregivers and other children in the caregiver's home.

{¶ 57} Under subsection (b), the juvenile court found that the children are

"too young to express [their] wishes. GAL recommends permanent custody."

{¶ 58} Under subsection (c), the juvenile court found that

[J.S.] has never resided with mother or alleged father. [J.S.] came into Agency custody shortly after birth and has been raised by the current caregiver.

* * *

[M.S.] came into Agency custody shortly after birth. Upon release from NICU, [M.S.] has been residing with current caregivers.

{¶ 59} Under subsection(d), the juvenile court found that

[J.S.] deserves a safe and stable environment where his basic needs can be met, and he can thrive. This cannot be achieved with either parent as Alleged Father has failed to participate in any case plan services. Mother has participated in some services but has failed to complete services and/or show a benefit from services. Mother and Alleged Father only visited with [J.S.] approximately three times, virtually, during [J.S.'s] first year of life.

* * *

[M.S.] deserves a safe and stable environment where her basic needs and extensive medical needs can be met. This cannot be achieved with

either parent as they have not received any training as it relates to the care of [M.S.], as Alleged Father has failed to participate in any case plan services. Mother has participated in some but has failed to complete services and/or show a benefit from services. Mother and Alleged Father have only visited with [M.S.], virtually, three times in approximately 9 months.

{¶ 60} Under subsection (e), the juvenile court found, which we noted earlier, that Mother had four other children who were not in her custody. In addition, Alleged Father had another child who had been adjudicated dependent and had been placed in the permanent custody of CCDCFS.

{¶ 61} Undeniably, the trial court's best-interest determination encapsulated above, was supported by competent and credible evidence. Our review reflects that the best-interest factors that the juvenile court must consider under the second prong was contained in the record. As such, we conclude that the juvenile court's termination of parental rights and award of permanent custody was supported by clear and convincing evidence. Therefore, contrary to Mother's assertion, the juvenile court's decision was not against the manifest weight of the evidence.

{¶ 62} Moreover, as recognized, all children have "'the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re S.B.,* 8th Dist. Cuyahoga Nos. 110016 and 110017, 2021-Ohio-1091, ¶ 35, citing *In re J.B.* at ¶ 66, quoting *In re Hitchcock,* 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life" for dependent children and

to "facilitate adoption to foster permanency for children." *Id.,* citing *In re N.B.* at ¶ 67, citing *In re Howard,* 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986). The record here demonstrates that the trial court sought to fulfill that goal.

**{¶ 63}** Accordingly, we overrule the sole assignment of error.

**{¶ 64}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

ANITA LASTER MAYS, A.J., and
MARY J. BOYLE, J., CONCUR