[Cite as *In re R.H.*, 2023-Ohio-78.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE R.H., ET AL. | : | |
| | : | |
| Minor Children | : | |
| | : | No. 111748 |
| [Appeal by T.J., Mother] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 12, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD21901166 and AD21901167

---

### *Appearances:*

Brian A. Smith Law Firm, LLC, and Brian A. Smith, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother ("Mother") appeals from the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, granting permanent custody of her minor children, R.H. and S.H., to appellee, the Cuyahoga County

Division of Children and Family Services ("CCDCFS" or the "Agency").[1]  For the reasons that follow, we affirm the juvenile court's judgment.

## Procedural and Factual History

{¶ 2} On February 8, 2021, CCDCFS filed a complaint alleging that R.H., born June 17, 2019, and S.H., born January 21, 2021, were abused (S.H.) and neglected children as defined by R.C. 2151.03(A)(2) and  2151.031(D), and requesting temporary custody to the Agency.  The complaint averred, in part, the following particulars:

> 1. Mother and S.H. tested positive for cannabis, methamphetamine, and amphetamine at the time of the child's birth. S.H. is mother's second child exposed to drugs.
>
> 2. Mother has a substance use problem, specifically, amphetamines and cannabis.  Mother has engaged in treatment but has failed to maintain sobriety.
>
> 3.  Mother is diagnosed with Depression and Bipolar Disorder and is not currently engaged in mental health services.
>
> 4. Alleged father, [J.H.],[2] abuses cannabis.  Father resides with mother, leaving the children without a sober caregiver.
>
> 5.  Alleged father, John Doe, has failed to establish paternity and has failed to support, visit, or communicate with the child[ren] since birth.

---

[1] The juvenile court issued two judgment entries: one for each child.  Additionally, because the documents contained in the two trial records are virtually identical, we will refer to the record pertaining to R.H. to represent both children, unless specifically noted otherwise.

[2] Alleged father is not a party to this appeal but will be referenced throughout to provide context.

{¶ 3} Following a hearing held on April 12, 2021, the juvenile court placed the children in the predispositional temporary custody of CCDCFS. The Agency developed a case plan to assist Mother in remedying the issues that led to the children's removal. Specifically, the case plan was geared towards addressing Mother's challenges with substance abuse, mental health, parenting, suitable housing, and with providing for the children's basic needs.

{¶ 4} The Agency also developed a case plan that required that the alleged father establish paternity for the children, complete mental health and substance abuse assessments, and comply with any resulting recommendations. Additionally, the case plan required that the alleged father submit to random drug testing and that he obtain and maintain stable housing.

{¶ 5} On May 19, 2021, following a hearing held on May 3, 2021, the juvenile court adjudicated S.H. abused and adjudicated both children neglected, then placed them in the Agency's temporary custody. In it journal entry, the juvenile court noted:

> Mother needs to completed substance abuse treatment, mental health treatment and establishing housing. Mother has been referred for services on multiple occasions. Mother has not submitted to drug testing as requested. Mother does not visit with the child on a consistent basis. [CCDCFS] has offered the mother bus tickets to attend visits. Mother has not utilized the bus tickets. [J.H.] needs to establish paternity. [R.H.] receives occupational therapy, physical therapy, and speech therapy. He is being assessed for autism.

{¶ 6} The journal entry also noted that the parties agreed to proceed immediately to disposition. The journal entry further noted that the juvenile court

granted the Agency's oral motion to incorporate the testimony from the adjudicatory hearing into the dispositional hearing.

{¶ 7} On November 8, 2021, CCDCFS filed a motion to modify temporary custody to permanent custody. In support of that motion, CCDCFS asserted that the conditions listed in R.C. 2151.414(B)(1)(a) existed and that one or more of the factors listed in R.C. 2151.414(E) applied to the parents at issue. Additionally, CCDCFS asserted that after considering all relevant factors, including those listed at R.C. 2151.414(D)(1)(a)-(e), the evidence to be presented would establish clearly and convincingly that an award of permanent custody was in the children's best interest.

{¶ 8} In the affidavit filed in support of CCDCFS's motion, caseworker Tammi Billingsley ("Billingsley") averred in pertinent part, as follows:

2. I was assigned the case in April 202[1].

3. The children were committed to the predispositional custody of CCDCFS on April 12, 2021.

4. The children were adjudicated abused and neglected and were committed to the temporary custody of CCDCFS pursuant to orders journalized on May 20, 2021.

5. A case plan was filed with Juvenile Court and approved which required that mother obtain and maintain safe and stable housing, complete substance abuse treatment, maintain sobriety, complete a mental health evaluation, and comply with any resulting recommendations.

6. Mother participated in intensive outpatient substance abuse treatment but has failed to complete recommended after-care services and she continues to test positive for illegal substances.

7. Mother failed until August 2021 to complete a mental health evaluation. Mother has not yet completed the recommended mental health treatment.

8. Mother lacks safe housing in which to care for the child[ren]. Mother resides with alleged biological father, [J.H.], who has not addressed his substance abuse issues as required by his case plan.

9. Mother has failed to visit with the children on a consistent basis.

10. A case plan was filed with Juvenile Court and approved which required that alleged biological father, [J.H.], obtain and maintain stable housing, establish paternity for the children, complete mental health and substance abuse assessments, comply with any resulting recommendations, and to submit to random drug testing.

11. [J.H.] has not established paternity and has not participated in any required case plan services. [J.H.] resides with mother who has not adequately addressed her substance abuse and mental health issues.

12. [J.H.] has failed to visit with the children on a consistent basis.

13. Presumed father, [D.H.] has failed to support, visit, or communicate with the child since birth.

14. Alleged father, John Doe, has failed to establish paternity and has failed to support, visit, or communicate with the child since birth.

{¶ 9} On May 2, 2022, the juvenile court held a dispositional hearing.

**Dispositional Hearing**

{¶ 10} At the outset of the hearing, counsel for the alleged father orally motioned the court for a continuance, so that the alleged father could take steps to establish paternity. Counsel indicated that the alleged father had suffered the loss of his father in November 2021, had trouble contacting the case worker, and had found the cost of the test prohibitive.

{¶ 11} Counsel for the Agency opposed the motion, noting that she had communicated with the case worker, who indicated that she had received no communication from the alleged father. Counsel also noted that the alleged father

had been apprised of a paternity test that would be free of charge. Thereafter, the juvenile court denied the motion.

{¶ 12} CCDCFS presented the testimony of Billingsley, whose testimony conformed to her averments in the affidavits filed in support of the Agency's motion for permanent custody. Billingsley testified about the case plan developed to assist Mother and alleged father to remedy the issues that prompted the Agency's involvement. Pertinent to the case plan's mental health component, Billingsley testified that Mother was referred to three separate mental health providers. However, it was not until August 2021 that Mother completed the mental health evaluation with Ohio Guidestone, the third provider.

{¶ 13} At that time, Mother, who has diagnoses of depression and bipolar disorder, was recommended for mental health services. Billingsley testified that Mother completed seven sessions, but stopped participating in November 2021, and was ultimately discharged for lack of participation. Billingsley noted that although all three mental health service providers accommodated Mother's transportation needs and one provider would even travel to the home, Mother failed to engage in the services.

{¶ 14} Relevant to the substance abuse component, Billingsley testified that because both of Mother's children were born exposed to drugs, she was required to undergo substance abuse treatment. Billingsley noted that Mother completed an assessment, entered a 30-day residential treatment program, but failed to complete the aftercare program. Billingsley further noted that Mother failed to demonstrate

sobriety, failed to comply with weekly random drug screens, and, during the pendency of this matter, had only provided five drug screens. Billingsley testified that all five drug screens were positive for THC, methamphetamines, and amphetamines.

{¶ 15} Billingsley offered testimony about the housing component of the case plan and noted that the Agency referred Mother to the Community Collaborative for assistance, but Mother failed to take advantage of any services. Billingsley also noted that Mother had been living with the alleged father for a substantial period of time during the pendency of this matter but, when requested, Mother refused to allow her to inspect the entire premises.

{¶ 16} Billingsley testified that Mother consistently failed to visit with the children and noted that the Agency had scheduled weekly in-person visits, but Mother missed almost 80 percent of these visits. The Agency then scheduled virtual visits every other week. Mother did attend some virtual visits but was not consistent. Billingsley noted that Mother failed to provide any form of financial support while the children were in the Agency's custody.

{¶ 17} Billingsley testified that although the Agency made referrals for the alleged father to receive services under the developed case plan, he was unresponsive to the Agency's efforts. Ultimately, the alleged father never engaged in any of the case plan services. Billingsley testified that, when contacted, the presumed father, D.H., categorically denied being the children's father and indicated he did not want anything to do with the children.

{¶ 18} Billingsley discussed the Agency's attempts to identify relatives of either the Mother or the alleged father, who might be able to appropriately care for the children. The Agency explored the children's maternal grandmother as a possible placement candidate, but she indicated that she had exhausted all efforts to assist the Mother and that she wanted no involvement.

{¶ 19} Billingsley noted that the Agency also explored relatives of the alleged father, but those efforts were unsuccessful. Billingsley noted that since the alleged father had not established paternity, the Agency's efforts were more challenging. At one point, the Agency was in contact with an aunt and uncle who expressed an interest, but they resided in Massachusetts and had never had any relationship or bond with the children. Additionally, Mother expressed that the alleged father was not pleased with the Agency's attempts to get his relatives involved with the matter.

{¶ 20} Billingsley testified that the children had been together with the same foster parents since February 2021. Billingsley noted she had the opportunity to visit with the children in the foster home and found them to be well-cared for, to be well-bonded with the foster family, and to be progressing well.

{¶ 21} Based on the foregoing, Billingsley recommended that the juvenile court grant the Agency's respective motions for permanent custody.

{¶ 22} The children's guardian ad litem, Becky Blair (the "GAL"), who previously filed written reports likewise recommending that permanent custody be granted to the agency, verbally indicated that the children needed the safety and security of a permanent placement.

{¶ 23} On May 18 and 19, 2022, the parties filed their respective proposed findings of fact and conclusions of law, as the juvenile court had requested. On June 13 and 14, 2022, the juvenile court journalized entries terminating all parental rights and ordered the children placed in the permanent custody of CCDCFS.

{¶ 24} Mother now appeals and raises the following assignments of error for our review:

### Assignment of Error No.1

The trial court's ruling, granting Appellee's motion to modify temporary custody to permanent custody, was against the manifest weight of the evidence.

### Assignment of Error No. 2

The trial court's ruling, granting Appellee's motion to modify temporary custody to permanent custody, was in error, because Appellee did not show that it had made "reasonable efforts" to reunite the family pursuant to R.C. 2151.419.

### Assignment of Error No. 3

The trial court abused its discretion in admitting a copy of Appellant's drug test results from the SCT Advantage Medical Clinic, without the testimony of a records custodian or other qualifying witness, which were hearsay, as defined in Evid.R. 801 et seq.

### Law and Analysis

{¶ 25} In the first assignment of error, Mother argues the juvenile court erred in granting permanent custody to the agency because the decision is against the manifest weight of the evidence.

{¶ 26} At the outset, we note, "'[i]t is well established that a parent has a fundamental right to raise and care for his or her child.'" *In re L.M.*, 8th Dist. Cuyahoga No. 106072, 2018-Ohio-963, ¶ 16, quoting *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061 and 103367, 2015-Ohio-4991, ¶ 35, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28; *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 40. "We recognize * * * that termination of parental rights is '"the family law equivalent of the death penalty in a criminal case."'" *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 35, quoting *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶ 27} An appellate court will not reverse a juvenile court's decision awarding permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re J.M-R.*, 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 28. "Clear and convincing evidence" is that measure or degree of proof that is more than a "preponderance of the evidence" but does not rise to the level of certainty required by the "beyond a reasonable doubt" standard in criminal cases. *In re K.S.*, 8th Dist. Cuyahoga No. 109928, 2021-Ohio-694, ¶ 15, citing *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 8, citing *In re Awkal*, 95 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist.1994), citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 512 N.E.2d 979 (1987). "It produces in

the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re K.S.* at ¶ 15, citing *In re M.S.* at ¶ 18.

{¶ 28} The termination of parental rights is governed by R.C. 2151.414. *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. R.C. 2151.414 sets forth a two-part test courts must apply when deciding whether to award permanent custody to a public services agency.

**First Prong: R.C. 2151.414(B)(1)(a)-(e)**

{¶ 29} Under the first prong, the juvenile court must find by clear and convincing evidence one of the following five factors:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 30} "Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied." *In re S.S.*, 8th Dist. Cuyahoga No. 109356, 2020-Ohio-3039, ¶ 28, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 28.

{¶ 31} In this matter, the juvenile court found, pursuant to R.C. 2151.414(B)(1)(a), that the children could not be placed with either parent within a reasonable time or should not be placed with either parent.[3]

{¶ 32} In assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E). *In re A.V.,* 8th Dist. Cuyahoga No. 101391, 2014-Ohio-5348, ¶ 58; *In re R.M.,* 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14; *In re B.P.,* 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 13.

{¶ 33} A juvenile court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent. *In re Ca.T.,* 8th Dist. Cuyahoga No. 108969, 2020-Ohio-579, ¶ 27, citing *In re V.C.,* 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 42.

---

[3] The findings as set forth in this decision refers to both children, unless specifically noted.

{¶ 34} Pursuant to R.C. 2151.414(E)(1), the juvenile court found that

> the objectives of the case plan required Mother to complete a substance abuse assessment and treatment, a mental health assessment and treatment, maintain stable and appropriate housing, submit to random drug testing. However, Mother has failed to substantially comply with the case plan services.

{¶ 35} Indeed, the testimony presented supports the juvenile court's findings under R.C. 2151.414(E)(1). Specifically, that despite reasonable case planning and diligent efforts by the Agency to assist Mother to remedy the problems that initially caused the children to be placed outside the home, Mother never fully engaged with her case plan.

{¶ 36} Although, as previously stated, the alleged father is not a party to the appeal, it is worth noting that he never engaged in any case plan services. The juvenile court found that

> [t]he objectives of the case plan required alleged father, [J.H.] to establish paternity, obtain and maintain stable housing, complete mental health and substance abuse assessment, and submit to random drug testing. [J.H.] has not established paternity and has not completed any of the required case plan services. [J.H.] resides with mother who has not adequately addressed her substance abuse and mental health issues.

{¶ 37} Pursuant to R.C. 2151.414(E)(2), relating to chronic mental illness and chemical dependency, the juvenile court found that

> [m]other has a substance abuse disorder related to amphetamines and cannabis. Mother and S.H. tested positive for cannabis, methamphetamines, and amphetamines at the time of the child's birth. S.H. is mother's second child exposed to drugs. * * * Mother participated in intensive outpatient substance abuse treatment but failed to complete recommended after-care services and continues to test positive for illegal substances.

{¶ 38} In fact, the testimony presented supports the juvenile court's finding under R.C. 2151.414(E)(2). In addition to Mother not fully engaging with any of the three separate mental health service providers the Agency referred for treatment, Mother submitted a sparse five drug screens, all of which were positive for illegal substances.

{¶ 39} Pursuant to R.C. 2151.414(E)(4), the juvenile court found that Mother had demonstrated a lack of commitment toward the children by failing to support, visit, or communicate with the children consistently. In this respect, the testimony established that Mother was initially scheduled to visit weekly with the children but missed 80 percent of these in-person visits. Throughout the pendency of this matter, Mother provided no financial support for the children. Mother's failure to engage in the objectives of the case plan is demonstrative of her lack of commitment to being reunited with the children.

{¶ 40} Pursuant to R.C. 2151.414(E)(16), regarding any other factor the court finds relevant, the juvenile court found that

> [t]he chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent is so severe that it makes the parent unable to provide an adequate permanent home for the child[ren] at the present time and, as anticipated, within one year from the time the Court holds the hearing.

{¶ 41} Indeed, the juvenile court's finding above is supported by clear and convincing evidence. Billingsley provided exhaustive testimony that the agency developed a case plan designed to remedy the issues that led to the children's removal. Yet, the overwhelming evidence established that Mother failed to commit

to the case plan's objectives geared, in particularly, to addressing mental health and substance abuse concerns. Without question, Mother did not engage in, and therefore could not benefit from, the very services designed to achieve reunification of Mother and children.

{¶ 42} Additionally, although Mother completed a 30-day residential drug treatment program, she did not follow through with aftercare. Mother compounded the situation by failing to consistently submit to the Agency's random drug screens, submitting only five, all of which were positive for illegal substances. Further, Mother failed to fully embrace the importance of addressing her mental health. Again, although Mother completed the mental health assessment, she never followed through with the recommended services, abandoning the program after only seven sessions.

{¶ 43} The above sampling clearly demonstrates that the children could not be placed with Mother within a reasonable time or should not be placed with Mother. As such, there is no dispute that the juvenile court's finding pursuant to R.C. 2151.414(B)(1)(a), is supported by the record.

{¶ 44} Our review of the record reveals that the juvenile court's findings under the first prong are supported by competent and credible evidence. Finding no error with the juvenile court's findings under the first prong, we consider the court's finding under the second prong.

## Second Prong: R.C. 2151.414(D)

{¶ 45} The second prong also requires the juvenile court to find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. We review a trial court's best-interest determination under R.C. 2151.414(D) for an abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. In this regard, "'[a] trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 60, citing *In re T.W.*, 8th Dist. Cuyahoga No. 85845, 2005-Ohio-5446, ¶ 27, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

{¶ 46} R.C. 2151.414(D)(1) sets forth best-interest factors that the court must consider when making the best-interest determination under R.C. 2151.414(D)(1), including

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child * * *;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 47} The juvenile court has considerable discretion in weighing these factors. *In re D.A.* at ¶ 47. Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, "[R.C. 2151.414(D)(1)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child * * *." *Id.* at ¶ 64.

{¶ 48} Further, the Ohio Supreme Court, in *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, held that R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). *Id.* at ¶ 31. Consideration is all the statute requires. Although a reviewing court must be able to discern from the magistrate's or juvenile court's decision, and the court's judgment entry, that the court satisfied the statutory requirement that it consider the enumerated factors, we may not graft onto the statute a requirement that the court include in its decision a written discussion of or express findings regarding each of the best-interest factors. *Id.*

{¶ 49} We begin our inquiry into the second prong by noting the juvenile court articulated that it considered the relevant factors set forth under R.C. 2151.414(D)(1) when assessing the children's best interests. The record before us indicates that the juvenile court satisfied the statutory requirements herein.

{¶ 50} Specifically, under subsection (a), the record reveals that the children had been residing together with the same foster parents since February 2021. Billingsley testified that the children were well-bonded with the foster parents, that they were well-cared for, and that they were progressing well.

{¶ 51} Under subsection (b), the record reveals the children were too young to express their wishes, but the GAL recommended that the juvenile court grant permanent custody to the Agency. Under subsection (c), the record reveals the children had been in the Agency's uninterrupted temporary custody since May 2021.

{¶ 52} Under subsection(d), the juvenile court found that

> [t]he chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent is so severe that it makes the parent unable to provide an adequate permanent home for the child[ren] at the present time and, as anticipated, within one year from the time the Court holds the hearing.

{¶ 53} Clearly, the juvenile court considered the children's need for a legally secure placement and considered whether that placement could be achieved without a grant of permanent custody. Given the findings illuminated above, reunification could not be achieved.

{¶ 54} Under subsection (e), the record reveals that the presumed father, D.H., adamantly denied being the father of the children and professed not wanting any involvement. The juvenile court found that "D.H. has failed to support, visit, or communicate with the children since birth." The instant finding supports the conclusion that the presumed father had abandoned the children.

{¶ 55} In this matter, the trial court's best-interest determination encapsulated above, was supported by competent and credible evidence. Our review reflects that the best-interest factors that the juvenile court must consider under the second prong was contained in the record. As such, we conclude that the juvenile court's termination of parental rights and award of permanent custody was supported by clear and convincing evidence. Therefore, contrary to Mother's assertion, the juvenile court's decision was not against the manifest weight of the evidence.

{¶ 56} Moreover, as recognized, "[a]ll children have "'the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation."'" *In re S.B.,* 8th Dist. Cuyahoga Nos. 110016 and 110017, 2021-Ohio-1091, ¶ 35, quoting *In re J.B.* at ¶ 66, quoting *In re Hitchcock,* 120 Ohio App.3d 88, 696 N.E.2d 1090 (8th Dist.1996). "Where parental rights are terminated, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *Id.,* quoting *In re N.B.* at ¶ 67, citing *In re Howard*, 1986 Ohio App. LEXIS 7860 (5th Dist.1986). The record here demonstrates that the trial court sought to fulfill that goal.

{¶ 57} Accordingly, we overrule the first assignment of error.

{¶ 58} In the second assignment of error, Mother argues that the juvenile court erred when it granted the motion for permanent custody, because the Agency did not show, pursuant to R.C. 2151.419, that it made "reasonable efforts" to reunite the family. Mother's assertion lacks merit.

{¶ 59} Preliminarily, we note, "'the Ohio Revised Code imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home.'" *In re J.D.*, 8th Dist. Cuyahoga No. 111039, 2022-Ohio-2677, ¶ 66, quoting *In re R.D.W.*, 8th Dist. Cuyahoga No. 110661, 2021-Ohio-4304, ¶ 34, citing R.C. 2151.419. "''Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated.''" *Id.*, quoting *In re R.D.W,* quoting *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001-Ohio 2302. "'To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification.'" *Id.*, quoting *id.*

{¶ 60} "''Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.''" *In re R.D.W.* at ¶ 35, quoting *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 95. Importantly,"''[r]easonable efforts' does not mean all available efforts.'" *Id.*, quoting *In re J.B.*, 8th Dist. Cuyahoga No. 109039, 2020-Ohio-3675, ¶ 21, quoting *In re Lewis*, 4th Dist. Athens No. 03CA12, 2003-Ohio-5262, ¶ 16. "'Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible.'" *Id.*, quoting *In re K.M.*, 12th Dist. Butler No. CA 2004-02-052, 2004-Ohio-4152, ¶ 23.

{¶ 61} In the first assignment of error, we discussed the case plan the Agency developed to effect Mother's reunification with her children. We also discussed the

diligent efforts the Agency expended to get Mother to utilize the recommended services designed to address the issues that caused the children to be removed from their home. There, we concluded that the record undeniably established that Mother failed to engage in the case plan. Because the Agency developed a case plan, made diligent efforts, but Mother failed to engage with the case plan, we find no merit to Mother's assertion.

{¶ 62} Accordingly, we overrule the second assignment of error.

{¶ 63} In the third assignment of error, Mother argues that the trial court abused its discretion in admitting a copy of drug test results from SCT Advantage. Mother contends the results do not fall under any recognized hearsay exception and the Agency should have been required to produce the technician or other practitioner who conducted the tests. Mother's assertion is not well-taken.

{¶ 64} Preliminarily, "we note that the admission or exclusion of evidence, including whether it is inadmissible hearsay, is left to the broad discretion of the trial court." *Ohio v. Verbanac*, 8th Dist. Cuyahoga No. 111427, 2022-Ohio-3743, ¶ 30, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), and *State v. Smith*, 34 Ohio App.3d 180, 517 N.E.2d 933 (5th Dist. 1986). "To the extent this issue exists, the trial court is competent to make such rulings at trial." *Id*.

{¶ 65} Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within one of the exceptions listed in Evid.R. 803. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987).

{¶ 66} Under Evid.R. 901(B)(10), medical records may be authenticated by "[a]ny method of authentication or identification provided by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio or by other rules prescribed by the Supreme Court." *Id.*

{¶ 67} Relevantly, R.C. 2317.422 provides that medical records are self-authenticating if certain conditions are met. R.C. 2317.422 states, in pertinent part:

> [T]he records, or copies or photographs of the records, of a hospital, * * * in lieu of the testimony in open court of their custodian, person who made them, or person under whose supervision they were made, may be qualified as authentic evidence if any such person endorses thereon the person's verified certification identifying such records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of the business of the institution.

{¶ 68} In this matter, the document at issue contained a certificate of medical records signed by an employee of the organization certifying that the attached records were true and authentic copies of the medical records prepared in the usual course of business of that institution. This certificate was sufficient under Evid.R. 901(B)(10) and R.C. 2317.422. As such, the juvenile court properly admitted the records.

{¶ 69} Accordingly, we overrule the third assignment of error.

{¶ 70} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR